UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

WALIEK VEREEN,

Defendant.

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:  08/23/2021

20-CR-566 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Defendant Waliek Vereen moves to suppress evidence obtained as a result of a warrantless search of his car on May 21, 2020, in which NYPD officers found the firearm that led to the instant criminal charge. *See* Dkt. 6 (indictment); Dkt. 13 (motion to suppress). The Government opposes the motion, contending that the searching officer smelled the odor of marijuana emanating from the vehicle and therefore had probable cause to conduct a warrantless search. *See* Dkt. 15. The Court held an evidentiary hearing on June 28, 2021, focusing primarily on the question of whether the officers' assertion of having smelled marijuana was credible. *See generally* Transcript of Suppression Hearing, Dkt. 30 ("Tr."). For the following reasons, the Court finds that the search was supported by probable cause, and accordingly denies the motion to suppress.[1]

## BACKGROUND

The testimony presented at the suppression hearing and the evidence submitted by the parties, including video footage from the officers' body cameras, reveal the following facts. On May 21, 2020, Vereen and Jennifer Gayol were driving in the Bronx when they were pulled over by the police for having illegally tinted windows. *See* Complaint ("Compl."), Dkt. 1, ¶ 4(a); Tr. at

---

[1] The Court does not address the Government's alternative argument that the search was independently justified by consent. *See* Dkt. 15.

17. The officers who performed the stop were Sergeant Paul Negersmith and Officer Adam Keegan of the NYPD. Tr. at 16. At the time of the stop, Gayol was driving and Vereen, the owner of the car, was in the passenger seat.

As the officers approached the vehicle, the vehicle's front windows were rolled down; Keegan asked the occupants to roll down their rear windows. Tr. at 18.; Def. Ex. H. to Dkt. 14 ("Negersmith Cam. 1") at 1:07. Gayol and Vereen informed the officers that Gayol, the driver, did not have a permit or license and was learning to drive. Tr. at 42. During this interaction, Vereen was holding an unlit cigarette, at one point grabbing "the side that would be lit." Tr. at 58; *id*. at 29 ("[The cigarette] wasn't lit when I approached the vehicle."); *see also* Negersmith Cam. 1 at 1:23-1:36.

Negersmith testified that as he was "walking up to the vehicle," he "noticed the strong odor of marijuana coming from the vehicle"—specifically "burnt marijuana"—a scent with which he claimed to be well acquainted. Tr. at 19, 29, 60. About half a minute into the officers' interaction with the vehicle's occupants, the sound of an igniting lighter can be heard clicking on the video. Tr. at 59; Negersmith Cam. 1 at 1:59. About two minutes later, Negersmith asked Vereen, "Waliek, just a little bit of weed and that's it, brother?" *See* Negersmith Cam. 1 at 3:54-3:56; Tr. at 20. Negersmith testified that he asked Vereen that question because he had smelled marijuana. Tr. at 20, 48. No audible response from Vereen is heard on the video, and Negersmith did not recall hearing any response. *Id*. at 48.

The officers asked Vereen and Gayol to exit the vehicle. When Vereen stepped out, he was by then holding a lit cigarette or cigar. Def. Ex. I to Dkt. 14 ("Negersmith Cam. 2") at 0:04-0:06; Tr. at 60. While Keegan questioned the occupants near the back of the car, Negersmith proceeded to conduct a warrantless search of the cabin, beginning in the front passenger seat. *See*

Negersmith Cam. 2 at 0:31. Negersmith testified that he decided to search the car based on the odor of marijuana, stating that such odor "gives strong suspicion that there is other marijuana in the car." Tr. at 20. When searching the car, Negersmith testified that he was looking for marijuana. *Id*. at 62.

The search soon turned up what appeared to Negersmith to be a marijuana "roach"—a term that refers to "the remains of a smoked marijuana cigarette." *United States v. Grotke*, 702 F.2d 49, 51 (2d Cir. 1983). *See* Compl. ¶4(e); Tr. at 47. When Negersmith found the roach, he said, apparently to himself, "There's that little bit of weed right there that we smelled. Right there. That's what I fucking smelled." Negersmith Cam. 2 at 0:50; Tr. at 28-29. Negersmith testified that he believed the roach was a marijuana cigarette because "it had a strong odor to it, consistent with marijuana, and it was also rolled in a . . . rolling paper, . . . commonly used in smoking marijuana." Tr. at 21. Negersmith further testified that the roach looked like it had been recently lit—and likely smoked "within the hour," Tr. at 31—because "it just looked flakey, like there was still a little ash maybe on it." *Id*. at 22. In response to questioning from the Court, Negersmith elaborated that his assertions about how recently the roach had been smoked were based on "[n]othing really, just the look of the cigarette. It looked new, newly rolled, newly smoked" and "wasn't stale." Tr. at 52-53. Negersmith conceded during cross-examination that his statement that the roach was smoked in the last hour was "a guess." Tr. at 53. *See also id*. at 61 (agreeing that his testimony about how recently he thought the roach was lit was an "estimat[ion]").

After locating the roach, Negersmith proceeded to search the remainder of the passenger compartment. Although Negersmith agreed with defense counsel on cross-examination that he had at that point "already found the source of the smell of marijuana," Tr. at 53–54, he testified

that he searched the back of the vehicle because he was "searching for marijuana." *Id*. at 22. In the back seat, Negersmith located a 9 mm Smith & Wesson pistol. Tr. at 21; Dkt. 6 (indictment). After the firearm was located, Gayol and Vereen were placed in handcuffs. Tr. at 30.

At that point, several officers, including Officer George Lippi, arrived on the scene. Tr. at 30. Negersmith pointed to the car and told Lippi, "There's weed right there, there's a roach. You see the roach," and Lippi responded, "yeah, I see it." *See* Gov. Ex. 1 to Dkt. 15 ("Lippi Cam.") at 1:14; Tr. at 30. Officer Lippi gave arguably inconsistent statements the following day. In an incident interview at 9:45 a.m., he stated that the officers reported smelling marijuana coming from the vehicle before searching it. Dkt. 14-5 at 2. Then, in a "conferral" at noon that day, Lippi reportedly said that the marijuana had been "in plain view," without mentioning an odor. Dkt. 14-6 at 2. Officer Lippi did not testify at the hearing.

The roach was brought to a police lab for testing 11 months later, in April of 2021, at the behest of the Government. Tr. at 92–93. Criminalist Benjamin Torres of the NYPD's controlled substance analysis section, who has worked on approximately 400 cases involving marijuana, performed the testing. Tr. at 64–65, 67. Torres first weighed the sample, finding it weighed a total of 88 milligrams, 65 milligrams of which was the vegetative material itself. *Id*. at 76, 86. Torres then took the below photo of the roach, which includes both "the actual paper of the cigarette; and below that . . . some of the vegetative matter that was in the paper and also loosely in the packaging of the evidence that [Torres] received":



Tr. at 73. After photographing the evidence, Torres conducted a "macroscopic examination" and a "microscopic examination," looking for "characteristic trichomes or hairs that are found present on vegetative matter, specifically looking for ones that are characteristic of marijuana or cannabis." *Id*. at 77. He also conducted a "Duquenois-Levine color test." *Id*. Based on these tests, Torres "was able to conclude that [the roach] was consistent with vegetative matter of a cannabis plant," and no other plant. *Id*. at 79, 99. However, the "presence of marijuana"—that is, illegal cannabis—"could not be determined due to insufficient material required to perform all testing." Dkt. 19-1 at 2; Tr. at 82; *id*. at 85 (confirming that there was "too little to determine if in fact it's illegal marijuana"). On cross-examination, Torres testified that the fact that the vegetative matter appeared to be from the cannabis plant says nothing about whether it is "the legal or the illegal type of cannabis." Tr. at 83-84.

## DISCUSSION

Having considered the testimony elicited at the suppression hearing and the parties' written submissions, the Court finds that the Government has carried its burden of proof to

establish that the search of Vereen's car was supported by probable cause. *See United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (on a motion to suppress, the Government bears the burden of proof to establish probable cause).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One of those exceptions is the "automobile exception," whereby officers may conduct a warrantless search of a lawfully stopped vehicle if they have probable cause to believe it contains contraband or other evidence of a crime. *See Ornelas v. United States*, 517 U.S. 690, 693 (1996); *California v. Acevedo*, 500 U.S. 565, 570 (1991); *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). An officer has probable cause to search a vehicle "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas*, 517 U.S. at 696. An officer's "experience and training" may also allow him or her to discern probable cause where a layperson could not. *See United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004). "The standard does not demand certainty but only a fair probability that contraband or evidence of a crime will be found." *Id*. (citation omitted). As to the scope of such a warrantless search, it is "no narrower— and no broader—than the scope of a search authorized by a warrant supported by probable cause"; that is, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 823, 825 (1982); *see also United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010).

Defendant does not contend that the stop of his vehicle was unlawful.[2] The parties further agree that, in May 2020, a genuine odor of marijuana emanating from a car would have provided an officer with probable cause to search the passenger compartment of the car, or at the very least to *commence* a search.[3] *See United States v. Colon*, No. 10-CR-498 (RPP), 2011 WL 569874, at *12 (S.D.N.Y. Feb. 8, 2011) ("The odor of marijuana coming from a vehicle can establish probable cause."). What the parties dispute, principally, is whether Negersmith actually smelled marijuana.

Vereen makes several points in support of his contention that the Government has not established that Negersmith in fact smelled marjiuana. In his pre-hearing motion papers, Vereen argued that it is not credible that the police could have smelled marijuana prior to searching the car. He contends (1) that the officers could not plausibly have smelled marijuana over the smell of tobacco smoke, asserting that defendant was "smoking [a Black & Mild cigar in the vehicle] at the moment that the officers pulled the vehicle over," that the "cigar remained lit throughout Mr. Vereen's encounters with the officers that night," and that "the potency of fresh cigar smoke would have completely overpowered any smell of marijuana emanating from a single roach," Dkt. 14 at 6; (2) that the alleged marijuana roach recovered by the officers could not be conclusively established to contain illegal marijuana, such that the officers' statements that they smelled marijuana lack corroboration; and (3) that the officers' statements, particularly the post-

---

[2] An officer's observation of a traffic offense, even a minor one, provides probable cause to stop the vehicle. *See United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994). Negersmith testified that the officers stopped the car because it had "extremely dark tints," or "blacked-out windows." Tr. at 17. "Driving a car with excessively tinted windows is illegal under New York Law." *United States v. Morgan*, No. 17 CR. 354 (KBF), 2017 WL 4621632, at *3 (S.D.N.Y. Oct. 12, 2017) (citing N.Y. Veh. & Traffic Law § 375(12-a)(b)).

[3] As discussed below, Vereen argues that Negersmith no longer had probable cause to search the remainder of the vehicle after he found the roach in the front.

incident statements of Officer Lippi, were inconsistent. In a supplemental submission following the suppression hearing, the Defense argues that Negersmith's in-court testimony was "not credible as a matter of law." Dkt. 32 at 2. Vereen also elaborates on his contention, first raised in his pre-motion reply brief, Dkt. 16 at 5, that even if Negersmith genuinely smelled marijuana, there was no probable cause to "justify the search of the backseat of the car conducted after Sergeant Negersmith located the source of the odor," Dkt. 32 at 5. The Court disagrees, and discusses these arguments in turn.

## I.        The Government Has Established That Negersmith Smelled Marijuana

The Court finds that Negersmith credibly testified that he smelled marijuana prior to searching the vehicle, and that this testimony is buttressed by the totality of the other evidence.

At the outset, Defendant's primary argument in his pre-hearing briefs for why the officers' statements were not credible—that the "potency of fresh cigar smoke" would have overpowered any smell of marijuana—is seriously undermined by the testimony elicited at the suppression hearing, testimony that was corroborated by the body camera footage. As discussed above, the testimony at the hearing together with the body camera footage established that at the time the officers initially approached the vehicle, which is when Negersmith testified that he first smelled marijuana, Tr. at 29, Vereen was *not* smoking a lit cigarette or cigar. He was rather holding an unlit cigarette. *Id.*; Negersmith Cam. 1 at 1:23 to 1:36 (showing Vereen moving an unlit cigarette around in his hand, at one point grasping it by the end that would be burning had it been lit). Although Vereen lit a cigarette or cigar prior to exiting the vehicle—the clicking sound of a lighter is heard at 1:59 of Negersmith's first body camera video—Negersmith's testimony is that he had already smelled marijuana at that point. This is fully plausible, given that he had been standing directly outside the vehicle's open passenger-side windows for nearly a full minute

before the sound of the lighter can be heard. There is accordingly no support for Defendant's assertion that he was smoking a Black & Mild cigar "at the moment that the officers pulled the vehicle over," and that such cigar "remained lit" throughout the entirety of Vereen's interactions with the police. Dkt. 14 at 6. Indeed, that contention is flatly contradicted by the body camera footage. Regardless of whether Defendant is correct that fresh cigar smoke would have overpowered the odor of marijuana, Negersmith had ample opportunity to detect the odor of marijuana prior to Vereen's lighting of a tobacco product.

Next, the video evidence supports Negersmith's testimony that he smelled the odor of marijuana. Negersmith's body camera shows that, prior to searching the vehicle, he asked Vereen, "Just a little bit of weed and that's it, brother?" Negersmith Cam. 1 at 3:54-3:56. While this question does not, of course, prove that Negersmith smelled marijuana, it lends some credibility to Negersmith's testimony and undermines Defendant's argument that "at no point during the three-minute-long encounter with Mr. Vereen with the rolled down windows did the officers claim to smell marijuana." Dkt. 14 at 7.

Similarly, the physical evidence of the roach, although it does not conclusively prove that there was illegal marijuana in Defendant's car, further supports the credibility of Negersmith's testimony that he smelled marijuana. Based on macroscopic and microscopic examination, as well as a "Duquenois-Levine color test," Torres "was able to conclude that [the roach] was consistent with vegetative matter of a cannabis plant"—and no other plant. Tr. at 79, 99. Negersmith himself testified that, based on his familiarity with marijuana, he recognized the roach as the remnants of a marijuana cigarette based on the way it smelled and how it was rolled. *Id*. at 21. Although Torres acknowledged on cross-examination the possibility that the roach could have contained a legal variety of cannabis such as hemp, *see Id*. at 84, that mere possibility

does not discredit Negersmith's testimony, particularly as the evidence is fully consistent with the roach having been marijuana. *Cf. United States v. Bignon*, 813 F. App'x 34, 37 (2d Cir. 2020) (summary order) (because "probable cause may exist even when a suspect is in fact innocent," officer had probable cause to arrest defendant who he believed was smoking marijuana based on, *inter alia*, "the odor of marijuana in the air," even where "police lab tests ultimately showed that [the defendant's] cigarette did not contain marijuana").[4] Defendant further argues that "[e]ven assuming the unidentified substance contained in the roach was marijuana," its small quantity undermines Negersmith's testimony that he smelled a "strong odor" of marijuana. Dkt. 32 at 4–5. But that argument discounts the significant possibility that the roach represented the remnants of a recently-smoked marijuana cigarette, whose scent could have lingered in the car after having been consumed.[5] The Court does not place especially great weight on Negersmith's "guess" or "estimate" that the roach had been smoked within the hour prior to the stop, Tr. at 53, 61, but if anything, the discovery of the roach provides support for Negersmith's testimony.

Defendant finally argues that Negersmith's testimony must be found generally not credible due to (1) inconsistencies between his testimony and the body camera footage about whether the police made a U-turn prior to stopping Vereen's vehicle; and (2) his "exagger[ation] and speculat[ion]" that the roach had been smoked recently. The Court is not persuaded, having

---

[4] There is also no evidence in the record to suggest that legal hemp has a significantly different odor from illegal marijuana. *Cf. United States v. Boggess*, 444 F. Supp. 3d 730, 737, n.1 (S.D.W. Va. 2020) (because "hemp and marijuana are varieties of the same species," it is "fair to infer that the odor of hemp could be reasonably mistaken for the odor of marijuana.").

[5] Although Defendant asserts that Gayol's affidavit "ma[kes] clear" that no marijuana had been recently smoked in the car, *see* Dkt. 32 at 5; Gayol Aff. ¶ 8, the Court does not find this affidavit to be especially credible, particularly in light of its assertion—strongly undermined by the video evidence—that "[a]t the time that the officers initiated the stop, Mr. Vereen was still smoking [a Black & Mild] cigar," Gayol Aff. ¶ 7.

found Negersmith's testimony to be generally credible and consistent with the other evidence.

*See United States v. Ortega*, No. 15-CR-320 (PAC), 2015 WL 6143758, at *5 (S.D.N.Y. Oct. 19,

2015) ("Whatever minor inconsistencies Defendants have claimed, they do not impair the

officers' credible recounting of the events at issue."); *United States v. Messina*, 806 F.3d 55, 64

(2d Cir. 2015) (internal quotation marks and citation omitted) ("[A] factfinder who determines

that a witness has been inaccurate, contradictory and even untruthful in some respects may

nevertheless find the witness entirely credible in the essentials of his testimony."). Defendant

also overstates his claim that Negersmith was baselessly speculating about how recently the

roach had been smoked. It is true that Negersmith made a "guess" or "estimate" that the roach

had been smoked within the hour, Tr. at 53, and that he was not able to support this assertion

with ironclad reasoning. But Defendant characterizes Negersmith as having said that the basis of

his opinion was "Nothing really"—full stop—when in fact his answer was as follows:

> THE COURT: And when you testified earlier that it appeared that [the roach] had been smoked in the last hour or so, so what is that based on?
>
> NEGERSMITH: **Nothing really, just the look of the -- look of the cigarette. It looked new, newly rolled, newly smoked . . . It wasn't stale, you know.**
>
> DEFENSE COUNSEL: Okay. And when you say stale --
>
> NEGERSMITH: It didn't seem old.

Tr. at 52. Similarly, Negersmith testified on direct examination that the roach looked to have

been recently lit because it "looked flakey, like there was still a little ash maybe on it," which in

his "training and experience," was "consistent with a cigarette that had been lit recently." *Id*. at

22. Although, as noted above, the Court is not inclined to place especially great weight on

Negersmith's estimates as to when, precisely, the roach had been smoked, it also does not agree

with Defendant that the exchange "demonstrates [Negersmith's] willingness to fabricate details in this case to ensure the search passes constitutional muster." Dkt. 32 at 3.

On the whole, the Court finds that Negersmith credibly smelled marijuana prior to commencing the search of Vereen's vehicle, and that the search of the passenger compartment of Vereen's vehicle was therefore supported by probable cause. *See Colon*, 2011 WL 569874, at *12; *United States v. Goolsby*, 820 F. App'x 47, 49 (2d Cir. 2020) (summary order), *cert. denied*, No. 20-6662, 2021 WL 2519283 (U.S. June 21, 2021) (odor of burnt marijuana provided probable cause for vehicle search); *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) ("[T]he odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception."); *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) ("Once the car was properly stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car."); *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993) ("The smell of burnt marijuana would lead a person of ordinary caution to believe the passenger compartment might contain marijuana."); *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (smell of marijuana "in itself . . . justified the subsequent search of [the defendant's] vehicle").

## II.     Negersmith Had Probable Cause to Continue the Search After Finding the Roach

The only remaining question is whether, even though Negersmith had probable cause to commence his search of the vehicle based on the odor of marijuana, he was required to end that search once he found the roach near the front of the car. *See Ross*, 456 U.S. at 825 (the permissible scope of a vehicle search pursuant to the automobile exception extends to any part of the vehicle where there is probable cause to believe the object of the search may be found). Defendant argues that when Negersmith "discovered the source of the smell of smoked

12

marijuana, i.e., the roach, he did not have probable cause to search the remainder of the vehicle," as there was no longer a fair probability that evidence of a crime or contraband would be found. Dkt. 32 at 6. The Government disagrees, arguing that "there continued to be probable cause that the vehicle contained more marijuana." Dkt. 33 at 4. The relevance of this question is, of course, that it was only when Negersmith searched the back seat of the vehicle that he retrieved the firearm that forms the basis for the instant criminal prosecution.

The Court agrees with the Government that Negersmith's probable cause to search the vehicle did not dissipate the moment he retrieved the roach in the front seat area. Defendant relies on Negersmith's affirmative response to defense counsel's statement that, when he found the roach, he had found "the source of the smell of marijuana." Tr. at 54. Defendant also notes that Negersmith responded affirmatively to defense counsel's question that, when he found the roach, he "believed that [it] was where the smell of marijuana was emanating from." *Id*. at 51. Defendant accordingly suggests that when Negersmith searched the back seat of the car, he no longer believed he would find marijuana, despite his testimony that he was "searching for marijuana," and that the odor of marijuana gave him "strong suspicion that there [was] other marijuana in the car." Tr. at 20, 22.

The problem with Defendant's argument is that courts have consistently held that the odor of burnt marijuana provides officers with probable cause to search *at least* the passenger compartment of a vehicle, *Goolsby*, 820 F. App'x 47 at 49; *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020); *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993), and that an officer's identification of some marijuana along the way does not require the search to end at that point. *See United States v. Turner*, 119 F.3d 18, 20-21 (D.C. Cir. 1997) (Garland, J.) (odor of burnt marijuana emanating from car and sight of marijuana-like material in passenger area

justified officer's search of entire car, including trunk); *United States v. Corley*, 408 F. App'x
245, 246-47 (11th Cir. 2011) (unpublished) (where officers smelled burnt marijuana during
traffic stop and then recovered some marijuana, they had probable cause to search the remainder
of the vehicle, including the trunk); *United States v. Loucks*, 806 F.2d 208, 210 (10th Cir. 1986)
(where officer initiated warrantless car search after smelling marijuana, and subsequently found
evidence of marijuana in the passenger compartment of the car, he was entitled to search the
remainder of the vehicle, including the trunk); *United States v. Hough*, 944 F. Supp. 20, 23
(D.D.C. 1996) (where officer smelled odor of marijuana and observed "discarded marijuana
cigarettes" on the car's floor, he had probable cause to search "all compartments of the car"). In
each of these cases, the fact that the officers saw or found some physical evidence of marijuana
that could have explained the initial smell did not require them to "call off the search." *Loucks*,
806 F.2d at 210.[6]

The common-sense principle animating these decisions is that, when a search is justified
by the odor of marijuana and the officer then finds some amount of marijuana, it would be
reasonable for him to conclude that, if he continues to search, there is a "fair probability" that he
will find more. *Gaskin*, 364 F.3d at 457. This principle was the basis of the Fourth Circuit's
decision in *United States v. Jones*, 952 F.3d 153 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1080
(2021). In that case, police responding to a complaint at the defendant's home smelled a strong
odor of marijuana coming from within the house. They arrested the defendant for possession of

---

[6] A different principle applies where an officer's probable cause to search is premised on the
belief that he is likely to find *a particular item* of evidence or contraband, in which case his
probable cause to search does dissipate upon the discovery of that particular item. *See United
States v. Jones*, 952 F.3d 153, 159 (4th Cir. 2020); *Horton v. California*, 496 U.S. 128, 141
(1990) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 517 (1971) (White, J. concurring
and dissenting)) ("Police with a warrant for a rifle . . . must terminate the search once the rifle is
found.").

marijuana and checked the house for other people, when they observed "a still-smoldering marijuana cigarette lying in an open trash can in the kitchen." *Id*. at 155. The police then obtained a warrant to search the entire house for evidence of marijuana possession. The defendant moved to suppress the evidence obtained in that search, arguing that "the warrant should have been limited in geographic scope because the smoldering marijuana cigarette in the trash can was the likely source of the marijuana odor," *id*., and that the marijuana odor "provided a basis to search only for the source of odor," *id*. at 158. The Fourth Circuit rejected this argument, holding that the scope of the officers' search, even though it had been justified in the first instance by the smell of marijuana, was not limited to searching and seizing the marijuana cigarette that was the apparent source of the smell. Judge Niemayer wrote:

> Common sense indicates that it was fairly likely that the marijuana Jones was smoking was not the only marijuana in the house. Indeed, a reasonable officer would be entitled to infer that it was most likely but a single portion of a larger quantity that was stored somewhere in the house. Moreover, it would also be reasonable to conclude that there was a fair probability that the house contained evidence of the source of the marijuana or the scope of Jones's possession violation. And, of course, common sense would also indicate that such evidence is often stored out of sight. In short, based on common sense and context, a fair probability existed that further evidence of Jones's crime would be uncovered elsewhere in his house, which justified a warrant authorizing the search of the entire house, not just the kitchen trash can where the smoldering marijuana cigarette was observed.

*Id*. at 159. So too here, the presence of the roach in the front of the car did not undermine—and arguably enhanced—the fair probability that additional marijuana would be found in the remainder of the passenger compartment.

Some courts have applied similar reasoning to *Jones* in the automobile context, holding that an officer's discovery of some marijuana in a vehicle gives rise to a fair probability that more marijuana will be found elsewhere in the vehicle. Indeed, the Second Circuit has upheld the denial of a suppression motion on this very basis, holding that "the fact that a marijuana cigarette

was seen in the open ashtray" of a car "gave rise to a fair probability that contraband or evidence of a crime would be found" elsewhere in the vehicle. *United States v. Carter*, 173 F. App'x 79, 81 (2d Cir. 2006) (summary order). *See also Turner*, 119 F.3d at 20 (smell of marijuana and other evidence in passenger compartment that was consistent with personal marijuana use provided probable cause to search trunk for contraband); *United States v. Cuevas*, No. 15-CR-846 (PKC), 2016 WL 2766657, at *3 (S.D.N.Y. May 12, 2016) (seeing marijuana in center console gave police "probable cause to believe that the vehicle contained contraband" and justified a search of the remainder of the car); *United States v. Burnett*, 791 F.2d 64, 66-67 (6th Cir. 1986) (finding marijuana on floor of car permitted officer to search the whole car, including the trunk, for more marijuana). *Cf. United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004) (discovery of what appeared to be cocaine on person of defendant during traffic stop provided officers with a "reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside" the defendant's vehicle).

Defendant also cites to the Tenth Circuit's decision in *United States v. Downs*, 151 F.3d 1301 (10th Cir. 1998), which drew a distinction between the smell of raw and burnt marijuana. The smell of burnt marijuana, the court held, is "generally consistent with personal use of marijuana in the passenger compartment of an automobile," such that a search justified by that odor should not extend to the trunk. *Id*. at 1303. The smell of raw marijuana, by contrast, gives rise to a fair probability that the car is "being used to transport large quantities of marijuana and that the marijuana has been secreted in places other than the passenger compartment." *Id*. But *Downs* does not help Defendant here, because Negersmith's search did not extend to the trunk of the car. It extended only to the passenger compartment, which *Downs* accepted as the permissible scope of a search undertaken in response to the odor of burnt marijuana. *See also*

*Nielsen*, 9 F.3d at 1491 ("The smell of burnt marijuana would lead a person of ordinary caution to believe *the passenger compartment* might contain marijuana."); *Kizart*, 967 F.3d at 695 ("[T]he smell of burnt marijuana gave [the officer] probable cause to search the sedan's passenger compartment.").

In sum, based on the credible testimony that Negersmith smelled the odor of marijuana, the Court finds he had probable cause to search the passenger compartment of Vereen's vehicle, and the Court further finds that he was not required to terminate that search merely because he found some physical evidence that could have explained the smell.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is denied. A status conference is scheduled for Monday, September 13, 2021 at 11:00 a.m. The parties shall advise whether they prefer to hold the conference in person or remotely. Time is excluded through that date under the Speedy Trial Act, pursuant to 18 U.S.C. § 3161(h)(7)(A). The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 13.

SO ORDERED.

Dated:     August 23, 2021
           New York, New York

_____
RONNIE ABRAMS
United States District Judge